# CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT AND REQUESTING FEES AND COSTS (DKT. 10)**
**JS-6: Remand**

## I. Introduction

On August 7, 2018, John Burnett ("Plaintiff") brought this action in the Riverside Superior Court against McLane Foodservice, Inc ("McLane"), Sonia Nunez ("Nunez") and Does 1-50.[1] The Complaint presents seven causes of action pursuant to the Fair Employment and Housing Act ("FEHA") and common law: (i) failure to accommodate disability; (ii) failure to engage in good faith interactive process; (iii) disability discrimination; (iv) failure to prevent discrimination/retaliation; (v) retaliation; (vi) wrongful termination in violation of public policy; and (vii) intentional infliction of emotional distress. Complaint ("Compl.), Dkt. 1-1. Nunez is only named as a defendant in the cause of action for intentional infliction of emotional distress.

On September 7, 2018, McLane removed the action on the basis of diversity jurisdiction given that Plaintiff and McLane are citizens of different states, *i.e.,* California and Texas. Notice of Removal ("Removal"), Dkt. 1. McLane argues that, because Nunez is a "sham defendant," her California citizenship should be disregarded in assessing diversity jurisdiction. *Id.* On October 4, 2018, Plaintiff filed a motion to remand the action to the Superior Court ("Motion" (Dkt. 10)).[2] McLane filed an opposition. Dkt. 17. Plaintiff filed a reply. Dkt. 20. A hearing was held on the Motion on January 28, 2019, and the matter was taken under submission.

For the reasons stated in this Order, the Motion is **GRANTED**.

///

---

[1] On September 14, 2018, an Order issued that dismissed Does 11-50 pursuant to Local Rule 19-1. Dkt. 9.
[2] The title of the Motion states that Plaintiff also requests an award of attorney's fees. However, that request is disavowed in the memorandum filed in support of the Motion. *See* Dkt. 10 at 25 n.6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
|---|---|---|---|
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

## II. **Background**

### A. General Allegations

Plaintiff began working for McLane in approximately 1993. Compl. ¶ 9. It is alleged that Plaintiff performed his job duties competently during his employment. *Id.*

In August 2013, Plaintiff began suffering from stress, depression and anxiety. *Id.* ¶ 10. He was treated by a physician. *Id.* He took a series of brief leaves of absence from work over the next few years due to periodic problems with his mental health. *Id.* Plaintiff returned from one leave of absence on January 19, 2016, and provided McLane with a note from his doctor. *Id.* ¶ 11. It stated that Plaintiff could not operate a forklift at work while he was taking Xanax, a medication prescribed to treat his mental health condition. *Id*. At the time, Plaintiff had a "desk position" at McLane but occasionally "helped on the forklifts." *Id.*

Nunez told Plaintiff that Plaintiff would need to get released for "full duty" because his position required him to operate a forklift.[3] *Id.* Plaintiff asked Nunez for clarification, and an accommodation as to any forklift duties. *Id.* Nunez refused. *Id.* Rather, Nunez "said [Plaintiff] had to choose—keep taking the medication to stay mentally healthy, but lose his income, or stop taking his medication and be back at work."[4] Dkt. 10 at 11; *see also* Compl. ¶ 11. It is alleged that, "[b]ecause Plaintiff needed to work and earn an income," he stopped taking Xanax, and returned to work. Compl. ¶ 11.

In early June 2016, Plaintiff again started to experience serious symptoms from his mental health conditions. *Id.* ¶ 12. Plaintiff told McLane that he was going to seek medical treatment for anxiety, depression and related symptoms. *Id.* On June 10, 2016, Plaintiff's treating physician placed him off work until August 6, 2016. *Id.* Plaintiff provided McLane with a copy of a note from that physician that stated this restriction. *Id.* When Plaintiff's condition did not improve, his physician extended his medical leave through October 8, 2016. *Id.* ¶ 16. Plaintiff provided McLane with the corresponding note from his physician. *Id.*

Nunez gave Plaintiff several company documents about medical leave and short-term disability benefits. *Id.* ¶ 13. One of them set forth McLane's medical leave of absence policy. *Id.* It stated, in part:

> In the event you are out on leave for more than 6 consecutive months, McLane policy states that "A medical leave may be granted for up to 6 months. If the teammate is unable or unwilling to return to work at the end of 6 months, he or she will be separated from employment."

*Id.*

---

[3] Plaintiff contends that these forklift duties were a "purported" function of his job, fabricated by Nunez, and that they were not essential. Compl. ¶ 11; *see also* Dkt. 23 at 9.

[4] Plaintiff asserts that, in failing to accommodate him and giving him an ultimatum, Nunez did not follow company protocol. *See* Dkt. 10 at 11 ("Nunez ignored the admonitions of her own 'HRM [Human Resources Manager] Worksheet,' and the law, and told Plaintiff that he would not be permitted to be at work unless he could help out with the forklift.").

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

Plaintiff applied for short-term disability benefits through a plan made available by McLane that was administered by Cigna. *Id.* ¶ 14. Cigna denied Plaintiff's benefits claim by a letter dated September 19, 2016, and copied Nunez on the correspondence. *Id.* ¶ 18.

Plaintiff's condition did not improve by October 2016. Consequently, his treating physician extended his medical leave again, this time through December 6, 2018. *Id.* ¶ 19. Plaintiff provided McLane with the corresponding note from his physician. *Id.*

Later in October, Nunez sent Plaintiff a letter that stated: "[Plaintiff] became unable to perform the essential functions of [his] position (with or without reasonable accommodation) on June 6th, 2016 and [has] not reported to work since then." *Id.* ¶ 20. The letter also stated that Cigna needed more detailed information regarding Plaintiff's condition "to review [his] Leave of Absence and have it approved." *Id.* It is alleged that "[t]his letter confused Plaintiff as he was unaware Cigna was involved in determining whether his medical leave would be approved in addition to his claim for STD benefits." *Id.*

On November 7, 2016, Plaintiff left a voicemail for Nunez confirming that he believed his physician had provided Cigna with all the requested information. *Id.* ¶ 21. Nunez sent Plaintiff a letter dated November 18, 2016, stating that Cigna had notified McLane that Plaintiff's medical leave was denied. *Id.* ¶ 22. Nunez advised Plaintiff to review the denial notice from Cigna and resolve the issue. *Id.* However, the notice from Cigna did not refer to Plaintiff's eligibility to take medical leave under California law. *Id.*

On December 5, 2016, Plaintiff's physician once again extended his medical leave, this time to January 6, 2017. *Id.* ¶ 23. Plaintiff provided McLane with the corresponding note from his physician. *Id.* About a week later, Nunez sent Plaintiff a letter confirming that she received this most recent note. *Id.* ¶ 24. Nunez reiterated McLane's six-month medical leave policy in her letter and threatened Plaintiff with termination because he had not returned to work by the six-month deadline. *Id.* The letter stated, in part:

> Due to prior absences you exhausted your Family Medical Leave on November 11, 2015. However, as an accommodation to your situation, McLane extended your leave of absence in the hope that you are able to return to work, with or without reasonable accommodation.
>
> We recently received a doctor's note extending your leave from "12/5/16 to 1/6/16." I'm assuming he meant 1/6/17, which is an additional 5 weeks of leave. . . . As you are aware from our prior conversations, documents provided to you when you went out on leave and receipt of the McLane Handbook, McLane's policy generally provides for a review of employment status when a teammate is away from their job for any reason for six months with no expectation of returning in the near-term.
>
> You recently reached your 6th month out on leave. We need clarification from your doctor indicating the correct return date and whether he reasonable [sic] expects you to return to work by this date.

*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

Nunez sent Plaintiff a letter dated December 22, 2016, with "additional threats of termination." *Id.* ¶ 25. This letter stated, in part:

> Cigna still shows that your Short Term Disability (STD) leave is unapproved based on the information you and your doctor have provided.
> ***
> You recently reached your 6th month out on leave. We need clarification from your doctor with the correct return date and whether he reasonable [sic] expects you to return to work by this date. If we don't hear back from you by 12/29/16, we will have to assume you are no longer interested in returning to work and will end your employment with McLane on December 30, 2016.

*Id.*

On December 29, 2016, Plaintiff spoke with a human resources assistant for McLane and confirmed that he planned to return to work. *Id.* ¶ 26. Shortly thereafter, Nunez sent Plaintiff a letter, dated January 3, 2017, stating that his employment had been terminated. *Id.* ¶ 27. The letter from Nunez stated, in part:

> As a recap, we sent you a letter on December 22, 2016 asking you to submit an updated doctor's note by December 29, 2016 with the correct return date and whether he reasonable [sic] expects you to return to work. However, we did not receive the updated note from you. You called us on December 29, 2016 to inform us that you planned to return to work[.]
> ***
> As you are aware, . . . McLane's policy generally provides for a review of employment status when a teammate is away from their job for any reason for six months with no expectation of returning in the near-term. As a result, McLane is separating you from employment for failure to return from leave.

*Id.*

It is alleged that "Plaintiff was shocked by Nunez's false statements in his termination letter," that "Nunez and McLane were well aware of Plaintiff's mental disabilities and imminent return to work date," and that "Plaintiff [had] submitted doctor's notes and provided information needed to support his medical leave of absence under California law." *Id.* ¶ 28.

      B.     Seventh Cause of Action for Intentional Infliction of Emotional Distress

The seventh cause of action, which alleges intentional infliction of emotional distress, is brought against all defendants, including Nunez. It alleges that "Nunez's conduct . . . caused, was intended to cause, and was done in reckless disregard of causing Plaintiff to suffer severe emotional distress." *Id.* ¶ 73. It alleges that the underlying conduct by Nunez

> includ[ed] giving Plaintiff an unlawful and discriminatory ultimatum that he either stop

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

treating for his known and/or perceived mental disabilities or save his job, deceiving Plaintiff into thinking that his position was secure when it was not, deceiving Plaintiff into thinking McLane would accommodate his need for leave, deceiving Plaintiff into thinking that his eligibility to take protected medical leave was conditioned on the approval of his STD claim, intentionally ignoring Plaintiff's numerous efforts to interact with McLane in good faith to receive reasonable accommodation for his known mental disabilities, deceiving Plaintiff that his medical leave was "unapproved" when, in fact, it was protected under the FEHA, intentionally failing to notify Plaintiff of his rights to leave under FEHA, concealing from Plaintiff the fact that Cigna was only making a determination of his eligibility to receive benefits under a STD claim rather than his legal right to take medical leave, terminating Plaintiff because of his known and/or perceived mental disabilities in violation of discrimination laws, and terminating Plaintiff because of his need and request for accommodation.

*Id.*

It is also alleged that Nunez took these actions "all while knowing how susceptible Plaintiff was to harm," and that this conduct "was outrageous and intended to cause Plaintiff severe emotional distress." *Id.* It is further alleged that "Nunez's conduct went beyond the normal scope of what is expected in the course of employment and constituted intentional unlawful conduct in violation of California law and public policy and denied Plaintiff fundamental rights and violated his fundamental interests." *Id.* ¶ 74.

### III.     Requests for Judicial Notice

In connection with the Motion to Remand, Plaintiff filed a request for judicial notice ("RJN" (Dkt. 10-3)). Plaintiff seeks judicial notice of two documents: (i) Ex. A: Plaintiff John Burnett's Complaint, Case No. RIC1816210, filed in the Superior Court of the State of California for the County of Riverside on August 7, 2018; and (ii) Ex. B: Defendant Sonia Nunez's LinkedIn webpage, https://www.linkedin.com/in/soniarnunez. The RJN is not opposed.

Pursuant to Fed. R. Evid. 201, a court may take judicial notice of facts that are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). District courts may take judicial notice of "records and reports of administrative bodies," *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (quotations omitted), as well as "undisputed matters of public record." *Harris v. Cty of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). Such matters "includ[e] documents on file in federal or state courts." *Harris*, 682 F.3d at 1132.

The Complaint is a document that is available and maintained in the records of the Superior Court. Therefore, judicial notice of it is appropriate. Similarly, the existence of the LinkedIn webpage of Sonia Nunez and the text included on that page can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Accordingly, each document for which judicial notice is requested meets the requirements of Fed. R. Evid. 201. However, judicial notice is not appropriate as to the truth of the statements made in either document. Accordingly, the RJN is **GRANTED**, subject to this limitation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

**IV.     Analysis**

       1.     Removal and Remand

A motion to remand is the procedural means to contest the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). In general, a state civil action may be removed only if, at the time of removal, it is one over which there is federal jurisdiction. 28 U.S.C. § 1441(a). Because federal courts are ones of limited jurisdiction, the removal statute is to be strictly construed, and any doubt as to the appropriateness of removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Thus, the removing party has the burden of establishing that removal is proper, including that there is federal jurisdiction over one or more of the claims. *Id.* "If a case is improperly removed, the federal court must remand the action because it has no subject matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

       2.     Diversity Jurisdiction and Fraudulent Joinder

Federal courts have diversity jurisdiction where the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states. 28 U.S.C. §§ 1332, 1441. Complete diversity of citizenship is required, *i.e.*, "the citizenship of each plaintiff [must be] different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

Fraudulent joinder "is a term of art." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* (internal quotations and brackets removed). To show that a defendant has been fraudulently joined, it must be established that "the individual[] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Thus, provided that there is a "non-fanciful possibility that plaintiff can state a claim under [state] law against the nondiverse defendants," a joinder is not deemed fraudulent. *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1062 (C.D. Cal. 2012).

"Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." *Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998). Further, a court "must resolve all material ambiguities in state law in plaintiff's favor" on a motion to remand. *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). "When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities." *Id.* at 1118.

"[A] defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009). "Remand must be granted unless the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
|---|---|---|---|
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Id.* (internal quotations and brackets omitted). Thus, Defendants have the "burden of establishing that Plaintiff is incapable of amending his complaint to state a valid IIED [or other] claim." *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1034 (C.D. Cal. 2016).

3. Intentional Infliction of Emotional Distress

"The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Light v. Cal. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017) (internal quotations removed). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* "A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996); *see also Light*, 14 Cal. App. 5th at 102.

Ordinarily, an employee's "claims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law." *Livitsanos v. Superior Court,* 2 Cal. 4th 744, 747 (1992). However, "[e]ven where an injury is otherwise compensable under the workers' compensation system, a cause of action seeking damages based on the injury may nevertheless be allowable where the employer's conduct falls outside the compensation bargain." *Light*, 14 Cal. App. 5th at 96. Several California Courts of Appeal have found that "the workers' compensation exclusivity doctrine is inapplicable to claims under the FEHA." *E.g., M.F. v. Pac. Pearl Hotel Mgmt. LLC,* 16 Cal. App. 5th 693, 700 (2017), *review denied* (Feb. 14, 2018); *Light*, 14 Cal. App. 5th at 101. Thus, an employee "may pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates FEHA and also satisfies the elements of the claim." *Light*, 14 Cal. App. 5th at 101. Although there is not unanimous agreement among the California Courts of Appeal on this issue, *see Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014), a court "must resolve all material ambiguities in state law in plaintiff's favor" on a motion to remand. *Macey*, 220 F. Supp. 2d at 1117.

"That the defendant knew the plaintiff had a special susceptibility to emotional distress is a factor that may be considered in determining whether the alleged conduct was outrageous." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998); *see also* CACI No. 1602 ("In deciding whether [name of defendant]'s conduct was outrageous, you may consider, among other factors, . . . [w]hether [name of defendant] knew that [name of plaintiff] was particularly vulnerable to emotional distress."). However, "major outrage is still essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurts, is not enough." *Cochran*, 65 Cal. App. 4th at 496.

B. Application

1. Whether There Is Diversity of Citizenship on the Face of the Complaint

Plaintiff is a citizen of California. Compl. ¶ 3. McLane is a Texas corporation. *Id.* ¶ 4. Its principal place of business is also in Texas. Removal, Dkt. 1 ¶ 16. Therefore, McLane is a citizen of Texas. Nunez is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
|---|---|---|---|
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

citizen of California. Compl. ¶ 5. It is not disputed that Plaintiff and Nunez are citizens of the same state.

A single non-diverse defendant precludes diversity jurisdiction. Plaintiff and Nunez are both citizens of California. Accordingly, there is not complete diversity of citizenship on the face of the Complaint.

       2.       <u>Whether the Citizenship of Nunez Should Be Disregarded</u>

McLane contends that Nunez is a "sham defendant" and that her citizenship should be disregarded in assessing diversity jurisdiction. McLane argues that Plaintiff does not, and cannot, state a viable claim for intentional infliction of emotional distress against Nunez. McLane argues that (i) Plaintiff's claim against Nunez is preempted by the worker's compensation exclusivity doctrine; (ii) none of the allegations in the Complaint supports a finding of the type of "outrageous" conduct required to support an intentional infliction of emotional distress claim; and (iii) the alleged conduct by Nunez was ordinary personnel management decision-making and administration of company policies that might support a claim against McLane, but not an independent cause of action against Nunez.

Plaintiff disputes McLane's arguments. His position includes the following: (i) material ambiguities in the governing state law, including as to worker's compensation exclusivity, must be resolved in his favor on a motion to remand; (ii) deficiencies in the Complaint, if capable of amendment, do not make a claim a "sham"; and (iii) the application of certain imprecise, legal standards, such as defining "outrageousness," should not be undertaken in resolving a motion to remand.

Even assuming that the Complaint, as written, would not survive a motion to dismiss as to the claim against Nunez, that is not enough to meet the standards for determining whether a party is a sham defendant. Instead, it is the burden of the defendant to "establish[] that Plaintiff is incapable of amending his complaint to state a valid IIED claim." *Rangel,* 200 F. Supp. 3d at 1034; *see also Padilla,* 697 F. Supp. 2d at 1159; *Martinez v. Michaels*, No. CV 15-02104 MMM (EX), 2015 WL 4337059, at *8-9 (C.D. Cal. July 15, 2015); *Burris v. AT&T Wireless, Inc.,* No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006). McLane has not met that standard.

McLane has not shown that Plaintiff would be precluded from amending his Complaint to allege additional facts as to Nunez that (a) amount to more than "common – though ultimately misguided – supervisory actions," *see Light*, 14 Cal. App. 5th at 102; (b) constitute extreme and outrageous conduct; and (c) violate the FEHA such that the claims would not be preempted by workers' compensation exclusivity, *see id.* at 101. The Complaint makes certain conclusory allegations to that effect, as well as certain more specific ones. In light of these allegations and the underlying alleged conduct by Nunez, McLane has not demonstrated that Plaintiff could not allege additional, specific details sufficient to state a claim for intentional infliction of emotional distress against Nunez. Thus, there is a "non-fanciful possibility" that plaintiff can do so. *Mireles*, 845 F. Supp. 2d at 1062.

Some of the alleged conduct by Nunez constitutes ordinary and routine personnel management activity. This includes informing Plaintiff of McLane's leave of absence policy. However, other allegations as to Nunez do not plainly fall within that category. These include those that aver intentional, deceptive conduct calculated to cause Plaintiff distress. *See, e.g., Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178 (N.D. Cal. 2003) ("A state court could find that plaintiff was denied medical leave in a deceptive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV18-01908 JAK (SHKx) | Date | February 5, 2019 |
|---|---|---|---|
| Title | John Burnett v. McLane Foodservice, Inc., et al. | | |

manner that results in the plaintiff being denied rights granted ordinarily to other employees," and thus "could find that plaintiff has established a cause of action for intentional infliction of emotional distress" against his supervisor.) (citing *Rulon-Miller v. Int'l Bus. Machines Corp.*, 162 Cal. App. 3d 241, 255 (1984), *disapproved on other grounds by Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000)); *Dagley v. Target Corp.*, No. CV 09-1330-VBF (AGRx), 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009) ("[I]f a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees', then a claim for intentional infliction of emotional distress is possible against a supervisor."); *Gibson v. Am. Airlines,* No. C 96-1444 FMS, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996) (same).

Plaintiff contends that Nunez's conduct went beyond applying company policies. Further, he contends that she violated certain company protocols. He argues that Nunez gave him an outrageous ultimatum that aggravated his fragile and compromised mental condition. Thus, he contends that he was told that he had to elect either to continue to take the medication needed to treat his mental health and lose his job, or discontinue the medication, thereby impairing his mental health and keep his job. Plaintiff further contends that Nunez fabricated certain material information, deceived Plaintiff in ways that compromised his job security, and singled him out for adverse treatment. Plaintiff also asserts that Nunez misled Plaintiff about his rights and deceptively caused him to be deprived of fundamental protections to which he was entitled. The allegation that Plaintiff was particularly susceptible to emotional distress due to his anxiety and depression -- and that Nunez knew about his particular susceptibility -- could also state the basis for a claim of intentional infliction of emotional distress. Plaintiff alleges that Nunez's conduct led not only to his termination, but also to the deterioration of his mental health.

In connection with responding to a claim of fraudulent joinder, Plaintiff need not demonstrate a strong likelihood of success on the merits. Applying these standards, McLane has not shown that Nunez is a sham defendant. Therefore, the citizenship of Nunez must be considered for the purposes of determining federal jurisdiction. As noted, because both Nunez and Plaintiff are citizens of California, there is no diversity jurisdiction. Therefore, remand is required.

### V. Conclusion

For the reasons stated in this Order, the Motion is **GRANTED.** This action is remanded to the Riverside County Superior Court, Case No. RIC1816210.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | ak |